[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution brought by the plaintiff wife against the defendant husband. The parties have married each other twice, first in 1969 and again in 1979 — after a brief separation. There is one minor child issue of the marriage, Susan born September 4, 1975. All three are living in the marital home on Cross Highway, Fairfield, but the parties have, in effect, been living separately though in the same building.
The plaintiff is 45 years of age, the defendant is 47. Both parties graduated from high school. The plaintiff worked as a bookkeeper for the defendant's landscaping business until 1988. Thereafter, she was most recently employed at the Bates Monument Company.
The defendant owns his own landscaping business which he operates out of his home. The business was started by his father and then turned over to him. It has been successful, but in the last three years his gross sales have declined as has the number of employees, according to the defendant's testimony. No business records, however, of any kind were introduced other than two income tax returns for 1990 and 1991 (personal) and a financial statement given to the Westport Bank Trust in April of 1991.
There are several pieces of property owned by the parties, some by each of them individually and some jointly.
At the time of the second marriage, plaintiff owned 4 Narrow Rocks Road and 2 Davenport Avenue. The defendant owned Cross Highway, the marital home, and 28 Davenport Avenue. During the second marriage, the parties acquired four other properties, to wit: 91 Saugatuck Avenue (joint ownership) and 91 Saugatuck Avenue (plaintiff's name only), 33 West Road, Clinton (joint ownership), 15 Molnar Drive, Shelton (defendant's sole ownership). In addition, the defendant owned a 1/6 interest in two pieces of property in Westport, one on Roseville CT Page 2509 Avenue and the other on Maple Avenue. The 1/6 interest was shared with other members of his family but not the plaintiff herein.
The plaintiff's childhood home was 91 Saugatuck Avenue and it was bought from her father and placed in both names; 95 Saugatuck Avenue was bought in 1988 for $300,000.00 and placed in the plaintiff's name. To buy this, the parties put on a blanket mortgage on both 91 and 95 Saugatuck Avenue. Both are two family houses although additions have been made to create more rental units in them without zoning approval. The plaintiff believes she can derive significant income from these two pieces of property. Actually, at the present time, both pieces of property are not providing sufficient income to pay the expenses thereof. Nevertheless, the plaintiff has asked that both pieces of property be awarded to her.
The defendant has asked that 95 Saugatuck Avenue be sold and the profit divided equally, and that he will grant all his right, title and interest in 91 Saugatuck Avenue to the plaintiff.
The plaintiff has been chiefly responsible for collecting the rents on all the properties owned by both parties, either jointly or solely, except for 28 Davenport Avenue in 1992. She has also paid the expenses and taken care of renting the properties.
Two of the properties have been foreclosed, to wit: 28 Davenport Avenue and Molnar Avenue in Shelton.
The cause of the dissolution of the marriage is not clear except that it is apparent that the parties have each gone their separate ways since about 1988. The responsibility, therefore, for the breakup must be shared equally by them.
The parties have agreed that legal custody of Susan should be shared jointly by them with her primary residence with the defendant and with reasonable visitation with the plaintiff, taking into account Susan's wishes. The stipulation to this effect was approved by the court as in the best interest of the child, Susan, and it is made an order of this court. There is no agreement, however, as to support.
To determine the amount of both alimony and support CT Page 2510 requires an investigation of the parties' earnings and/or earning capacity. In this case there are problems with the figures presented by both parties in their financial affidavits.
For example, the plaintiff is not working at the present time, having taken, first, a leave of absence from her last position at Bates Monument and then having been terminated, after the leave of absence became too long. She has not sought work either part or full time claiming stress caused by the divorce or that she had a job that she could go back to (apparently while the leave of absence was effective) or that she did not need one. The explanations were many and lacked credibility.
During the time the plaintiff worked for the defendant, her earnings in 1991 were reported to be $12,353.00, which appear, to be the figure she used for her financial affidavit on August 12, 1992 for her gross earnings. Her net earnings on that affidavit were $181.97.
While the plaintiff earned more at Bates Monument Company, she did testify she worked some 60 hours a week on occasion and her salary appeared to be closer to $400.00 a week than $242.00 during that period. However, taking into consideration the number or hours required to provide that amount of money, the court finds that her earning capacity is $300.00 a week.
The defendant has also minimized his earnings and, therefore, his earning capacity. His financial affidavit lists his monthly income at $2,833.00 gross and $2,153.58 net or an annual figure of $33,999.00. But his expenses are listed at $8,323.92 or $99,887.14 a year. This amount is almost exactly the amount the defendant listed as income from salary and business profit in his financial statement to the Westport Bank in April, 1991. (See exhibit I.)
There was also evidence that the defendant received cash income which was not reported. He claimed between $10,000.00 and $15,000.00 in cash upon cross-examination. The plaintiff, however, said when she was bookkeeper and while living with the defendant, that that amount was substantially greater.
Again, there are no records presented to substantiate CT Page 2511 the defendant's income and/or expenses. On this basis, the court finds that the defendant was an earning capacity of $90,000.00 a year or $1,730.76 a week.
Given the plaintiff's earning capacity as set forth above, her contribution to the support of Susan would be $57.00 a week. While using earning capacity and the amount of the defendant's earnings takes this matter out of the restrictions of the Guidelines, the court has used the minimum figure for incomes of $1,500.00 as the basis for determining the amount of support due Susan. The court finds that total support should equal $400.00 a week. The defendant is, of course, responsible for the balance after the payment by the plaintiff of $57.00 a week.
The question of alimony is also dependent on the income of the parties. The plaintiff is assuming that she can produce substantial income, which she has not been able to do for the past few years, from the rental properties which she has managed, since all of the properties have been under foreclosure. She has been able to save four of them from foreclosure by some extraordinary efforts which probably could not be repeated and which was done without any help from the defendant who, on the other hand, failed to save his two properties solely in his name from foreclosure, to wit: 28 Davenport Avenue and Molnar Drive, Shelton.
As plaintiff's counsel has said in his request for alimony, the plaintiff needs it. It also appears to the court that the defendant is in a position to pay $350.00 a week for this purpose until the plaintiff's death, remarriage or cohabitation within the meaning of the statute.
In determining the distribution of the properties, the court has taken into consideration the way in which the property was acquired and the extent to which it has been preserved from foreclosure. Only the property in Shelton was acquired without the plaintiff's consent and was placed in the name of the defendant to be used as a part of his landscaping business. The property at 28 Davenport Avenue was also acquired and placed in the sole ownership of the defendant. The Clinton beach property on West Avenue was acquired jointly with a mortgage based in part on property owned by the plaintiff and is in both names. The property at 91 Saugatuck Avenue was acquired by both parties and is held in both names and it was the childhood home of the CT Page 2512 plaintiff as has been noted above.
The property at 95 Saugatuck Avenue was purchased in 1988 and placed in the plaintiff's name because of the need for a blanket mortgage covering both parcels which would require the name of the plaintiff to be placed on this property — that was the explanation which mystifies the court. The properties at 4 Narrow Rocks Road and 3 Davenport Avenue were in the name of the plaintiff at the time of the second marriage. The property at 28 Davenport Road and the marital home were in the name of the defendant at the time of the second marriage. Furthermore, while all of the properties were under foreclosure, only four of them escaped being foreclosed, to wit: those in the sole name of the plaintiff and 91 Saugatuck Avenue. It was the plaintiff who took the necessary steps to prevent foreclosure of these properties. Both 28 Davenport Avenue and Molson Drive in Shelton were foreclosed and the defendant took no action to try to prevent that foreclosure.
While this matter was pending, the defendant asked the plaintiff to agree to a sale of the Clinton property, which she refused. Now, however, she is asking that it be sold and the proceeds divided equally while he is asking that he obtain full title to the property.
It appears to the court that both parties should retain the properties presently in their sole names, and that the defendant should quitclaim to the plaintiff all his interest in 91 Saugatuck Avenue which appears to have a negative value and which was saved from foreclosure by the plaintiff's action. The defendant has, in effect, saved the Clinton property from foreclosure by paying the mortgage on that property. However, the Clinton property appears to be the only property with a positive value other than the marital home and 95 Saugatuck Avenue, depending upon the amount of the mortgage attributed to that property.
The plaintiff's prospects for acquiring future assets appear somewhat low while that of the defendant appears substantially higher given the length of time he has been in business and the amount of money he has had available for his expenses. There was also evidence that he had not worked very hard during the winter and has spent most of his time hanging around the house rather than trying to obtain business or to engage in performing work of landscaping so that it may well be CT Page 2513 that this was a deliberate attempt to reduce his earnings while the divorce was pending.
Having considered all of the elements set forth in46b-81, 46b-82 and 46b-84 of the General Statutes, the court makes the following findings and orders:
1. The marriage has broken down irretrievably with no hope of reconciliation and it is hereby dissolved.
2. The parties shall have joint, legal custody of the minor child Susan with her primary residence with the defendant and reasonable visitation with the plaintiff with due regard for Susan's wishes in accordance with the stipulation agreed to by the parties and approved by the court as in the child's best interest and placed in the file.
3. The plaintiff shall pay $57.00 per week for the support of the minor child Susan, payment to be made to the defendant.
4. The defendant shall pay the plaintiff $350.00 a week as alimony until her death, remarriage or cohabitation.
5. The real property shall he disposed of as follows:
 a. The defendant shall quitclaim to the plaintiff all his right title and interest in 91 Saugatuck Avenue.
 b. The plaintiff shall retain title to the property presently in her sole name, to wit: 4 Narrow Rocks Road and 3 Davenport Avenue, both in Westport, and 95 Saugatuck Avenue, Westport.
 c. The defendant shall retain title to the property solely in his name, to wit: 1771 Cross Highway, Fairfield, and he shall retain ownership of his landscaping business, both its assets and liabilities.
 d. The plaintiff shall have no interest whatsoever in the business and no responsibilities for its liabilities.
 e. The defendant shall retain his interest in the properties on Roseville Avenue and Maple Avenue, Westport. CT Page 2514
 f. The property at 33 West Avenue, Clinton, shall be immediately placed on the market for sale, the price to he agreed upon by the parties, within thirty (30) days from the date hereof. If the parties are unable to agree on the asking price, each shall select a real estate broker and those brokers shall select a third broker whose decision shall be final as to the initial asking price.
 If the property is not sold within three (3) months at that price, the price may be reduced by five (5%) per cent. If it is not sold in six (6) months, it may be reduced by another five (5%) per cent. If it is not sold then, the advice of the broker heretofore selected by the two brokers selected by the parties shall determine how best to proceed to a sale.
 The net proceeds from the sale shall be divided equally between the parties. Net means the selling price less attorney's fees for the sale, closing costs, broker's commission.
 Between now and the date of sale, the parties shall be jointly responsible for the payment of the mortgage, taxes and utilities so as to keep the expenses up-to-date.
6. The defendant shall provide a life insurance policy in the amount of $50,000.00 naming the plaintiff as irrevocable primary beneficiary until such time as his obligation to pay alimony ceases.
7. The defendant shall provide medical, dental, hospital and health insurance for Susan. The signature of either parent shall be sufficient for processing insurance claims under any such policy or policies in accordance with Connecticut General Statutes 46b-84 and neither party shall interfere with the processing of any such insurance claim. Any reimbursement from such insurance shall be the property of the defendant so long as he is providing such insurance. All such expenses not covered by insurance shall be shared equally by the parties.
8. The defendant shall transfer all of his and his company's CT Page 2515 right, title and interest in the 1978 Cadillac to the plaintiff.
9. The defendant shall have exclusive possession of the marital home beginning sixty (60) days from the entry of this judgment absent an appeal since there appears to be at least one legal, vacant rental unit in the Saugatuck properties.
10. Each party shall pay his or her own fees and costs and be solely responsible for the debts set forth in his or her affidavit including the liabilities for the real estate placed in his or her name by this decree.
11. A wage execution order shall enter.
It is so ordered.
MARGARET C. DRISCOLL, JUDGE REFEREE